IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CITY OF SCHERTZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-1112-RP |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| AGRICULTURE, *acting by and through George* | § | |
| *Ervin "Sonny" Perdue, III, Secretary of Agriculture*; | § | |
| RURAL UTILITIES SERVICE, *acting by and* | § | |
| *through Edd Hargett, State Director*; and GREEN | § | |
| VALLEY SPECIAL UTILITY DISTRICT, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court are Defendants United States Department of Agriculture ("USDA") and Rural Utilities Service's ("RUS") Motion to Dismiss, (Dkt. 21); Defendant Green Valley Special Utility District's ("GVSUD") Motion to Dismiss, (Dkt. 22); and accompanying briefing. For the reasons discussed below, the Court grants both motions and dismisses Plaintiff City of Schertz's ("Schertz") Complaint, (Dkt. 1), without prejudice.

**I. BACKGROUND**

This case emerged amidst ongoing litigation between Schertz and GVSUD about the Public Utility Commission of Texas's ("PUCT") decision to decertify a portion of GVSUD's wastewater service area. (Compl, Dkt. 1, at 4). GVSUD maintains that the decision violates 7 U.S.C. § 1926(b), which enables USDA to extend loans to rural water and wastewater associations managing utilities in poor communities. (*Id.* at 4–5). When USDA and an association close a loan under § 1926(b), the loan generally uses the association's customers or service areas as the collateral, and the statute protects the government's interest in that collateral by preventing those customers or service areas from annexation by municipalities or other associations. (*Id.* at 5). If developers want to use a

1

different utility for newly constructed buildings, or municipalities want to serve those buildings themselves, they must pay the § 1926(b) borrower for the ability to do so. (*Id.* at 6). RUS will generally only remove § 1926(b) protection from an association borrower's service area if the borrower consents; obtaining that consent is often equivalent to a purchase of property rights.[1] (*Id.*).

In 2003, USDA and RUS approved a § 1926(b) loan to GVSUD to assist GVSUD's investment in water utility infrastructure, secured by the resulting water utility revenue. (*Id.* at 8). After Schertz and Cibolo, an adjacent city, applied to PUCT to certify them as the wastewater utility for areas within their boundaries, the Fifth Circuit held that the 2003 loan protected GVSUD's ability to provide both water and wastewater service under § 1926(b).[2] *Green Valley Special Util. Dist. v. City of Cibolo, Texas*, 866 F.3d 339, 343 (5th Cir. 2017). (Compl., Dkt. 1, at 9).

In 2018, GVSUD applied for another § 1926(b) loan to be secured by wastewater provision revenues—the subject of this case. (*Id.*). USDA and RUS have approved the $5,430,000 loan, but the loan has not yet closed. (*Id.* at 9–10).

## II. LEGAL STANDARD

USDA, RUS, and GVSUD's motions to dismiss are made under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). Rule 12(b)(1) governs their arguments about sovereign immunity and lack of constitutional standing, while Rule 12(b)(6) applies to their arguments about lack of prudential standing. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (discussing application of Rule 12(b)(1)); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (discussing application of Rule 12(b)(6)). Because the

---

[1] *See Melissa Indus. Dev. Corp. v. N. Collin Water Supply Corp.*, No. 4:02-CV-345-RAS (E.D. Tex. filed Feb. 27, 2003) (Memorandum Brief in Support of USDA's Motion to Dismiss, Dkt. 20, at 2) ("For the real issue is not water, but future development and bargaining power—in a word, money.").
[2] *See infra* note 5 and accompanying text.

2

Court grants their motions based solely on Rule 12(b)(1), *see infra* Part III.B, the Court discusses only that standard here.

A party seeking to challenge the court's subject-matter jurisdiction to hear a case, including whether the plaintiff has constitutional standing to bring her claim, may file a motion under Federal Rule of Civil Procedure 12(b)(1).[3] *Home Builders Ass'n of Miss.*, 143 F.3d at 1010. The party claiming federal subject-matter jurisdiction must show that the court indeed has that jurisdiction. *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013). When evaluating a 12(b)(1) motion to dismiss, the court may look to "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 566–67 (5th Cir. 2010)). This material must suffice to demonstrate constitutional standing: it must assert a "concrete and particularized" injury (that is, one affecting the complaining party "in a personal and individual way"), a "causal connection between the injury and the conduct complained of," and a likelihood that the injury would be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 560 n.1 (1992). Of particular salience to this case is the standing requirement that plaintiffs must plead more than mere "'some day' intentions—without any description of concrete plans"—to sufficiently allege an injury. *Id.* at 564. And while "the risk of real harm" can

---

[3] The Ninth Circuit has warned district courts not to apply the standards of Federal Rule of Civil Procedure 12(b)(6) to motions to dismiss for lack of constitutional standing:
> *Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context because in determining whether plaintiff states a claim under 12(b)(6), the court necessarily assesses the merits of plaintiff's case. But the threshold question of whether plaintiff has standing (and the court has jurisdiction) is distinct from the merits of his claim. . . . This is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an "ingenious academic exercise in the conceivable" to explain how defendants' actions caused his injury. We simply note that *Twombly* and *Iqbal* deal with a fundamentally different issue, and that the court's focus should be on the jurisprudence that deals with constitutional standing.

*Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689–90 (1973)).

"satisfy the requirement of concreteness" for injuries, "a bare procedural violation" is not the equivalent of a truly "concrete harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

Meanwhile, "sovereign immunity deprives the court of jurisdiction," so "claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). The Administrative Procedure Act ("APA") generally allows federal agencies to assert sovereign immunity when they have not taken final agency action. *See infra* Part III.A (discussing the conditions under which the APA waives agencies' sovereign immunity). Thus, motions to dismiss on the basis of sovereign immunity that argue an agency has not taken final action are properly made under Rule 12(b)(1). *Cf. Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) ("Courts consider whether the [Federal Tort Claims Act] applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction.").

If the court does not have jurisdiction, it may not consider further claims in the case. So, when "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits" such as a Rule 12(b)(6) motion. *Willoughby*, 730 F.3d at 479 (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

### III. ANALYSIS

#### A. Sovereign Immunity

The Court first turns to USDA and RUS's Rule 12(b)(1) motion. *See Willoughby*, 730 F.3d at 479; Part II, *supra*. USDA and RUS argue that because the 2019 loan is not yet closed, they have not yet taken "final agency action," and so they are entitled to sovereign immunity. (Dkt. 21 at 4).

Schertz responds that USDA and RUS have in fact taken final agency action, waiving sovereign immunity and permitting judicial review. (Dkt. 24 at 1).

The Court must decide whether USDA and RUS's approval of GVSUD's loan application constitutes final agency action. As federal agencies, USDA and RUS are subject to the APA, which provides in relevant part that a court may review certain agency decisions so long as they reflect the agency's "final" action. 5 U.S.C. §§ 702, 704. The Fifth Circuit has noted the "two components" that the Supreme Court has delineated for determining whether an agency's action is in fact final. *Texas v. United States*, 891 F.3d 553, 565 (5th Cir. 2018). The first is that the action "must mark the 'consummation' of the agency's decisionmaking process" and "must not be of a merely tentative or interlocutory nature." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). The second is that the action "must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett*, 520 U.S. at 178)). To an extent, courts in the Fifth Circuit also "consider[] the practical effect of the determination." *Kershaw v. Resolution Trust Corp.*, 987 F.2d 1206, 1208 (5th Cir. 1993); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967) (emphasizing a "pragmatic" and "flexible" approach to the finality determination). If these conditions are satisfied, then the APA waives agencies' sovereign immunity for nonmonetary claims. *Rothe Dev. Corp. v. U.S. Dep't of Def.*, 194 F.3d 622, 624 (5th Cir. 1999) (citing 5 U.S.C. § 702).

Prior to closing the loan, GVSUD must provide a number of documents to USDA and RUS, such as proof of insurance, proposed contracts, and a draft ordinance. (Dkt. 21 at 5–6). USDA and RUS say that because "numerous agency decisions" about these documents have yet to be made, the approval of the loan is not final. (*Id.* at 5). Schertz says that all that remains is "the ministerial exchange of deliverables that customarily occurs at closing," and while those documents might be "subject to review," there is essentially nothing left for the agencies to do before GVSUD can "receive and spend the money." (Dkt. 24 at 11).

5

As RUS, USDA, and Schertz all note, the Eastern District of Texas decided in a similar context that USDA's approval of a § 1926(b) loan application constituted final agency action. *Melissa Indus. Dev. Corp. v. N. Collin Water Supply Corp.*, 256 F. Supp. 2d 557, 562 (E.D. Tex. 2003). (Dkt. 21 at 6; Dkt. 24 at 10–11). But precisely how similar the context was to the one at issue here is not clear from the court's opinion.[4] Even so, though, the *Melissa Indus. Dev. Corp.* court's holding is persuasive.

After reviewing the facts before the Court, the parties' arguments, and relevant case law, the Court finds that USDA and RUS's approval of the loan to GVSUD was final agency action. It has "all the hallmarks of APA finality that [the Supreme Court's] opinions establish." *Sackett v. E.P.A.*, 566 U.S. 120, 126 (2012). Contrary to USDA and RUS's arguments, their decision to approve the loan to GVSUD effectively "marked the 'consummation' of [their] decisionmaking process" as to the loan application itself. *Id.* at 127 (quoting *Bennett*, 520 U.S. at 178). The distinction Schertz draws between review and approval of the loan application itself and the subsequent "deliverables" due prior to closing the loan is well-taken. (Dkt. 24 at 6–9, 11). The former decision "confers no entitlement to further agency review," and "[t]he mere possibility that [they] might reconsider . . . does not suffice to make an otherwise final agency action nonfinal." *Sackett*, 566 U.S. at 127. It is true that USDA and RUS may evaluate the documents GVSUD sends them *after* the loan is approved, (Dkt. 21 at 5–6; Dkt. 26 at 2), but the approval of the loan itself is a distinct and now finalized action. When an agency's action "serve[s] to confirm a definitive position that has a direct and immediate impact on the parties," and the action's statement of that position cannot "be appealed to a higher level of [the agency's] hierarchy," the action is generally final. *Nat'l Pork*

---

[4] Nor is it clear from the related filings by the parties to that case, though their arguments closely resemble those of the parties to this case. *See Melissa Indus. Dev. Corp. v. N. Collin Water Supply Corp.*, No. 4:02-CV-345-RAS (E.D. Tex. filed Feb. 27, 2003) (Memorandum Brief in Support of USDA's Motion to Dismiss, Dkt. 20); *id.* (E.D. Tex. filed Mar. 17, 2003) (Plaintiffs' Response to USDA's Motion to Dismiss, Dkt. 27); *id.* (E.D. Tex. filed Mar. 26, 2003) (Defendant USDA's Sur-Reply to Plaintiffs' Response to USDA's Motion to Dismiss, Dkt. 28).

6

*Producers Council v. U.S. E.P.A.*, 635 F.3d 738, 755–56 (5th Cir. 2011) (quoting *Her Majesty the Queen in Right of Ontario v. U.S. E.P.A.*, 912 F.2d 1525, 1532 (D.C. Cir. 1990); *Ciba-Geigy Corp. v. U.S. E.P.A.*, 801 F.2d 430, 437 (D.C. Cir. 1986)).

By approving the loan to GVSUD, USDA and RUS "for all practical purposes 'ha[ve] ruled definitively.'" *U.S. Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807, 1814 (2016) (quoting *Sackett*, 566 U.S. at 131 (Ginsburg, J., concurring)). That decision is neither tentative nor interlocutory. And even if it may be an oversimplification that "[u]nder the relevant statutory scheme there is nothing left . . . to do but receive and spend the money," the decision to approve the loan has still been made. *Melissa Indus. Dev. Corp.*, 256 F. Supp. 2d at 562 (citing 7 C.F.R. § 1780.36 ("Projects may be obligated as their applications are completed and approved.")). *See also Rural Water, Sewer & Solid Waste Mgmt. Dist. No. 1, Logan Cty., Oklahoma v. City of Guthrie*, No. CV-05-786-R, 2007 WL 9724196, at *4 (W.D. Okla. Mar. 6, 2007) ("Notwithstanding the government's assertions to the contrary, the court finds the City defendants have adequately alleged they are challenging a final and specific agency action—approval and funding of the District's April 2003 loan.") (subsequent history omitted).

Second, by approving the loan, USDA and RUS "determined rights or obligations" they owed to GVSUD and vice versa. *Sackett*, 566 U.S. at 126 (quoting *Bennett*, 520 U.S. at 178). "Legal consequences . . . flow" from USDA and RUS's decision. *Id.* (quoting *Bennett*, 520 U.S. at 178). The parties do not seriously dispute that the consummation of USDA and RUS's decision-making process would determine rights, obligations, and legal consequences; what they dispute is whether that consummation has yet occurred. The Court thus finds that because USDA and RUS's decision-making process was consummated, this element of final agency action is present. (*See* Resp., Dkt. 24, at 9–10).

7

Overall, then, the Court finds that USDA and RUS's approval of the loan to GVSUD was a final agency action. USDA and RUS may not claim sovereign immunity to preclude judicial review of that action.

## B. Standing

Next, USDA, RUS, and GVSUD maintain that Schertz lacks constitutional standing to sue because it has not sufficiently pleaded an imminent and/or definite injury. (Dkt. 21 at 7–9; Dkt. 22 at 6–8). They make this argument under Rule 12(b)(1). *See* Part II, *supra*. The parties do not dispute facts at this stage, so the Court focuses on Schertz's complaint and any undisputed facts. *See Willoughby*, 730 F.3d at 479.

USDA, RUS, and GVSUD point out that a 2003 § 1926 loan from RUS to GVSUD "preclude[s] Schertz from providing wastewater service to its residents who live within the territory encompassed by" GVSUD. (Dkt. 21 at 7 (quoting Compl., Dkt. 1, at 19)). The Fifth Circuit recently held that the 2003 loan, despite only being secured by water revenue, protects GVSUD's water and wastewater systems alike until 2043.[5] *Green Valley Special Util. Dist. v. City of Cibolo, Texas*, 866 F.3d 339, 343 (5th Cir. 2017). (*See* Dkt. 21 at 8; Dkt. 22 at 7; Dkt. 24 at 15). USDA, RUS, and GVSUD therefore argue that the injury Schertz alleges, "preclusion from [its] sewer service area," is "not traceable to the complained-of conduct" by USDA and RUS in approving the 2019 wastewater loan at issue in this case, but rather to the 2003 loan. (Dkt. 21 at 8; *see also* Dkt. 22 at 6–8). USDA, RUS, and GVSUD assert that Schertz lacks the three elements of constitutional standing: injury, causation,

---

[5] Schertz suggests that the Court "decline to follow" *City of Cibolo*. (Dkt. 24 at 15). *City of Cibolo* created a circuit split with a 2010 Eighth Circuit decision: *Pub. Water Supply Dist. No. 3 v. City of Lebanon*, 605 F.3d 511, 520 (8th Cir. 2010). Schertz notes that before the Supreme Court denied certiorari in *City of Cibolo*, the Solicitor General argued in an amicus brief that the Fifth Circuit's approach was "incorrect." *City of Cibolo, Tex. v. Green Valley Spec. Util. Dist.*, 139 S.Ct. 783, 783 (2019) (mem.) (denying certiorari); Brief for the United States as Amicus Curiae at 9, *id.* (No. 17-938), 2018 WL 6382969, at *9. But, as USDA, RUS, and GVSUD respond, district courts are of course bound to follow binding circuit precedent until the circuit court or the Supreme Court says otherwise, regardless of the Solicitor General's opinion. (Dkt. 26 at 5; Dkt. 27 at 6–7). The Court will thus turn down Schertz's invitation to decline to follow *City of Cibolo*.

8

and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–62 (1992). (Dkt. 21 at 7–9; Dkt. 22 at 7–8). They say that no injury is imminent, because the 2003 loan already prevents Schertz from developing in a way that encroaches upon GVSUD's water and wastewater systems and the loan at issue here would not change the status quo; that the 2003 loan, not the 2019 loan, caused any injury Schertz might have suffered; and that if the Court were to prevent USDA, RUS, and GVSUD from closing the 2019 loan, the 2003 loan's restrictions on Schertz would be left untouched, failing to redress Schertz's asserted injury. (Dkt. 22 at 7–8).

Schertz responds that just because its "injury may be latent for some period" does not mean it lacks standing. (Dkt. 24 at 13 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–158 (2014)). If the 2019 loan closes, it argues, Schertz will be harmed "today" because GVUSD's protection will continue for another 16 years.[6] (*Id.* at 13–14). It analogizes the situation to one in which an incarcerated person convicted of an offense and sentenced to a prison term can challenge an ex post facto law extending the sentence.[7] (*Id.* (citing *Peugh v. United States*, 560 U.S. 530, 534 (2013)). Schertz also notes that if it were to "wait until 2043 to sue" (when the 2003 loan's protection expires), its 2043 claim would have long since been time-barred. (*Id.*).

The Court turns to Schertz's complaint and undisputed facts in the record. At one point in its complaint, Schertz briefly encapsulates the injury it alleges it will suffer if the 2019 loan proceeds: the loan would "arguably grant[] GVSUD a 40-year federally-protected monopoly on providing wastewater and sewer services to a significant area that is within Schertz's city limits, which is

---

[6] "The 2003 loan to GVSUD has a 40-year-term; it will be repaid by 2043. . . . [T]he [2019] Loan will also have a 40-year term, meaning that it will not be repaid until 2059—16 years after the 2003 loan is repaid." (Dkt. 24 at 13).

[7] GVSUD challenges the applicability of this analogy, noting that Schertz is "not a prisoner" who is "serving a prison term" and thus concluding that the analogy is wholly inapposite. (Dkt. 27 at 6). The Court will not discard Schertz's argument merely because Schertz is not the same type of entity as the one in the analogy. *See generally, e.g., Gustafson v. Alloyd Co.*, 513 U.S. 561, 589 (1995) (Thomas, J., dissenting) (analogizing investment prospectuses to cars); *Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 118 (S.D.N.Y. 1960) (Friendly, C.J.) (analogizing chickens to apples).

9

inconsistent with Schertz's current development plan for those areas." (Compl., Dkt. 1, at 10). Later on, Schertz enumerates three injuries that it argues it will suffer if USDA, RUS, and GVSUD are permitted to proceed with the 2019 loan. (*Id.* at 19–20). First, the loan would "preclude Schertz from providing wastewater service to its residents who live within the territory encompassed by GVSUD." (*Id.* at 19). Second, the loan would "frustrate and stifle Schertz['s] current plan for orderly growth and development within it's [sic] city limits and extra-territorial jurisdiction, which encompasses the area into which the city will expand." (*Id.* at 20). Third, the loan would "continue to prevent this [wastewater] service and stifle growth over a period of 40 years." (*Id.*). Schertz further maintains that the "property rights affected" by the 2019 loan are "unique and irreplaceable." (*Id.*).

The Court concludes that Schertz's complaint does not allege a sufficiently concrete and particularized harm to satisfy the requirements of standing. The causation and redressability elements of standing are likely present: any harm to Schertz that would exist is caused in large part by the 2019 loan, and not allowing the 2019 loan to proceed would remedy that harm. But the facts that Schertz has presented in its complaint and the record's undisputed facts do not possess the necessary specificity to allow the Court to determine an injury is imminent. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) (when evaluating constitutional standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing"). Without that, what is left is primarily allegations of "bare procedural violation[s]," which alone do not amount to concrete harms. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

It is true that the 2019 loan would extend the period during which Schertz is precluded from providing wastewater service to its residents who live in GVSUD's territory; however, Schertz has offered only a conclusory assertion to describe how exactly it would be injured as a result. Similarly, Schertz does not offer particularized facts to explain precisely how the 2019 loan would "frustrate

10

and stifle Schertz['s] current plan for orderly growth and development." (*Id.* at 19). Facts that indicate that the city concretely plans to expand into a particular area, and that GVSUD's wastewater control under the 2019 loan would hinder that expansion in a particular way—rather than the complaint's "'some day' intentions"—would bolster Schertz's argument. *Lujan*, 505 U.S. at 564. The majority of Schertz's complaint, which alleges a number of procedural violations, does not present facts supporting an inference of a concrete and particularized injury render ineffective.

The Court therefore does not reach the issue of whether Schertz has prudential standing to bring this case. (*See* Dkt. 21 at 9–11; Dkt. 22 at 8–13; Dkt. 24 at 16–20; Dkt. 26 at 5–8; Dkt. 27 at 7–11).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that USDA and RUS's Motion to Dismiss, (Dkt. 21), and GVSUD's Motion to Dismiss, (Dkt. 22), are **GRANTED**. Schertz's Complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE**.

**SIGNED** on October 29, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE